**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sunsites-Pearce Fire District,<br><br>          Plaintiff,<br><br>v.<br><br>Alex M Azar, II, et al.,<br><br>          Defendants. | No. CV-19-00203-TUC-RCC<br><br>**ORDER** |

Pending before the Court is Plaintiff's Motion for Judgment on the Administrative Record. (Doc. 22) and Defendant's Cross-Motion (Doc. 24). Upon review, the Court will grant Plaintiff's motion in part and deny Defendant's motion in part.

**I.   FACTUAL AND PROCEDURAL SUMMARY**

      *a.   Chief Steinberg's Participation in Diversion*

Sunsites-Pearce Fire District ("District") runs an ambulance service in and around Pearce, Arizona. AR 722. The District appointed Joshua Steinberg as Fire Chief on March 4, 2013. AR 487 at ¶¶3-4. Prior to his appointment, Chief Steinberg was charged in Cochise County with a Class 6 felony; disorderly conduct for "recklessly handl[ing] and discharg[ing] a Ruger semi-automatic handgun in the presence of his former girlfriend." AR 825. Subsequently, the county court granted the government's motion to suspend Steinberg's prosecution until completion of the Cochise County Adult Diversion

Program. AR 832-834. Once Steinberg completed diversion, the court granted the government's motion to dismiss the charges with prejudice. AR 834-37.

### b. District's Medicare Re-Enrollment Application

To receive repayment for ambulance services that the District provided to Medicare recipients, the District submitted a Form CMS-855B Medicare Re-Enrollment Application ("Application") on May 30, 2013. AR 496-97; AR 670-671. The Application listed Chief Steinberg as its managing employee. *Id*. Noridian Healthcare Solutions[1] reviewed the Application and informed the District on July 9, July 13, and November 19, 2013 that it needed to resubmit the Application, this time listing Chief Steinberg as the director/officer. AR 502-03, 676-79, 697, 702. Noridian also requested the District provide a Final Adverse Legal Action History Form for Chief Steinberg. AR 503.

The District submitted another Application on November 21, 2013, listing Chief Steinberg as director/officer. AR 510-512. In this submission, Steinberg indicated that he had no final adverse legal actions imposed against him. AR 510-511, 705.

On January 14, 2014, the Centers for Medicare & Medicaid Services ("CMS") approved the District's Application. AR 649. In 2016, the District submitted a Revalidation Application. AR 714-63. The Revalidation Application updated the District's information, but again did not report Steinberg's diversion as an adverse legal action. AR 659, 740. The District participated in the Medicare program from the date of approval until March 31, 2017. At that time, Noridian notified the District that its Medicare privileges had been revoked because it had made false or misleading statements regarding Chief Steinberg's legal troubles. AR 489, 520-21. The revocation was retroactive to March 4, 2013—the date Chief Steinberg was hired. *See* AR 520.

### c. Request for Reconsideration from CMS

The District requested reconsideration of Noridian's decision on April 26, 2017. AR 522-23, 654-55. The District argued its Application was not misleading; rather, the

---

[1] Noridian is a contractor for CMS that determines eligibility for Medicare payments under the authority of 42 U.S.C. § 1395ddd(a)-(b). AR 2.

2013 version of the regulations[2] were insufficient to put the District on notice that it needed to disclose Chief Steinberg's participation in diversion. AR 522, 654. Prior to a 2015 change in the regulations, the District argued, "conviction" did not include pretrial diversion programs such as the one in which Chief Steinberg participated. AR 522, 654.

When CMS denied reconsideration on July 24, 2017, it evaluated the decision under the regulations in effect at the time of the 2017 revocation–meaning, the 2015 version. AR 659-60; 42 C.F.R. § 1001.2. Because the 2015 version included pretrial diversions and deferred adjudications, CMS found that Chief Steinberg's participation in

---

[2] In 2013, when the revised Application was first submitted, the regulations permitted revocation of a supplier's billing privileges when:

> . . . The *provider, supplier, or any owner of the provider or supplier*, within the 10 years preceding enrollment or revalidation of enrollment, was convicted of a Federal or State felony offense that CMS has determined to be detrimental to the best interests of the Medicare program and its beneficiaries.
>
> (i) Offenses include—
>
> > (A) Felony crimes against persons, such as murder, rape, assault, and other similar crimes for which the individual was convicted, *including* guilty pleas and *adjudicated pretrial diversions*.

42 C.F.R. § 24.535(a)(3) (2013) (emphasis added). In contrast, the 2015 version of the regulation elucidated what constituted a revocable offense and modified which individuals needed to disclose prior convictions. The regulation states revocation may occur when:

> . . . The provider, supplier, or any owner *or managing employee* of the provider or supplier was, within the preceding 10 years, convicted (*as that term is defined in 42 C.F.R. 1001.2*) of a Federal or State felony offense that CMS determines is detrimental to the best interests of the Medicare program and its beneficiaries.
>
> (ii) Offenses include, *but are not limited in scope or severity to*—
>
> > (A) Felony crimes against persons, such as murder, rape, assault, and other similar crimes for which the individual was convicted, including guilty pleas and *adjudicated pretrial diversions*.

42 C.F.R. § 424.535(a)(3)(i) (2015) (emphasis added). The term "convicted," as defined under 42 C.F.R. § 1001.2(d), encompasses "[a]n individual or entity [who] has entered into participation in a first offender, deferred adjudication or other program or arrangement where judgment of conviction has been withheld." *Id.*

- 3 -

the Adult Diversion Program constituted a "conviction." AR 660. Therefore, CMS concluded, the District and Steinberg's failure to disclose his conviction on either the 2013 Application or 2016 Revalidation Application was misleading and justified revocation. AR 661.

Moreover, CMS stated revocation was appropriate because Steinberg's firing of a weapon in another's presence was similar to assault and could be considered a per se "detrimental" action under the regulations.[3] AR 660. Even if not considered detrimental per se, the charged conduct was detrimental because "[b]y recklessly handling and discharging a deadly weapon . . . Mr. Steinberg risked the safety and well-being of a former girlfriend." *Id.* This disregard for the safety of others could translate to Medicare beneficiaries and threatened the safety of the Medicare program. *Id.*

Next, the District argued that since Chief Steinberg was not considered "convicted" under *state* law, an affirmative response to the Application question was unnecessary. AR 522, 654. However, CMS determined the state law categorization was inconsequential, for it was federal law's definition of "conviction" that applied. AR 660.

Finally, the District claimed it had since removed Chief Steinberg from his Medicare duties, therefore its Medicare billing privileges should be reinstated. *Id.*; AR 558. But CMS decided there was insufficient evidence that the District had "terminated its business relationship" with Steinberg as necessary under 42 C.F.R. § 424.535(e).[4] AR 661. Although the District removed Chief Steinberg from contact with the Medicare Program, he was still "listed as a managing employee and authorized official for [the District]." AR 661; *see* AR 844. So, CMS refused to rescind the termination. AR 661.

### d. ALJ Review

The District then sought review from an Administrative Law Judge ("ALJ"). AR 22-30. The District argued that CMS erroneously applied the 2015 definition of

---

[3] Termination may occur under 42 C.F.R. § 42.535(a)(3)(i)-(ii) for felony offenses such as assault and "other similar crimes for which the individual was convicted" if CMS determines that the crime is "detrimental to the best interests of the Medicare program and its beneficiaries."

[4] Section 424.535(e) provides that Medicare revocation may be reneged if the revocation "was due to adverse [felony conviction] against an owner, managing employee, or an authorized or delegated official" and if the "supplier terminates and submits proof that it has terminated its business relationship with that individual within 30 days of the revocation notification."

- 4 -

"conviction," which expanded the term to include deferred adjudication programs wherein a conviction was withheld. AR 26. Since the original Application was filed in 2013, the District asserted it should not be held to the expanded 2015 definition. *Id.*

However, even under the 2015 regulation, the District claimed that Steinberg did not have a "conviction." *Id.* For a "conviction," the regulation requires an "adjudicated" pretrial diversion, but does not define "adjudicated," the District stated. *Id.* The dictionary definition of "adjudication," the District claimed, is "a judicial decision or sentence." *Id.* Therefore, convictions based on adjudicated pretrial diversions should be confined to instances in which a defendant has either been convicted or pleaded guilty (which constitutes a judicial decision of guilt) and then was given diversion. *Id.* Because there was no judicial decision about guilt and no sentence here, Steinberg's pretrial diversion did not qualify as a "conviction" and the District did not need to report it. *Id.*

Furthermore, the District contended that CMS should not have found Steinberg's actions were "detrimental to the Medicare program and its beneficiaries" because Steinberg's actions differed from the enumerated acts deemed "detrimental." AR 28.

Finally, the District again insisted that CMS should not have concluded that the District failed to terminate its relationship with Steinberg because it submitted evidence of Steinberg's removal from all Medicare duties. AR 29.

The ALJ granted summary judgment in favor of CMS. AR 1-6. The ALJ found that Chief Steinberg's participation in diversion was a "conviction" because both versions of the regulation included an "adjudicated pretrial diversion." AR 3-4. The ALJ found that, in this instance, "adjudication" "is synonymous with 'disposition.'" AR 4. The ALJ noted that the court disposed of this matter by dismissing the charges upon completion of diversion. *Id.*

Moreover, The ALJ found the District's argument that "adjudicated pretrial diversion" must mean diversion that occurs only subsequent to a guilty determination or conviction was incorrect because it completely overlooked the word "pretrial." *Id.*

Next, the ALJ concluded that it was within CMS's discretion to resolve whether an action was detrimental and subject to revocation of Medicare benefits. AR 4-5. CMS,

the ALJ stated, was not limited by the enumerated grounds for revocation stated in the regulations and had the ability to define other similar offenses as detrimental. *Id.* Regardless, the ALJ noted he would not reassess CMS's decision because CMS enjoyed "a non-reviewable discretionary authority vested in CMS by the Secretary." AR 5 (citing *Letantia Bussell*, DAB No. 2196 (2008)).

Finally, the ALJ determined it was not error for CMS to refuse to reinstate Medicare billing benefits even though the District removed Steinberg from his Medicare duties because it did not terminate him entirely. *Id.* The ALJ stated it was unclear how Chief Steinberg's duties as fire chief would prevent him from managing the ambulance service. *Id.*

### e. Departmental Appeals Board's Review

The District then appealed the ALJ's decision to the Departmental Appeals Board ("DAB"). AR 427. The District again contended that the ALJ erroneously applied the 2015 regulations. AR 455-56. This led to an incorrect determination that Steinberg's diversion constituted a "conviction" because it was an "adjudicated pretrial diversion." AR 458-460.

Here, the District added that termination was inappropriate because Steinberg was a managing operator, and managing operators were not added to the list of persons who must disclose adverse legal actions until the 2015 amendment. AR 455-56.

During oral argument, the District then explained that the ALJ erred when finding there was no genuine issue of material fact that the District had terminated its business relationship with Steinberg. AR 860-61. The District claimed it had presented evidence that representatives at Noridian assured the District that the separation of Chief Steinberg from the Medicare program was sufficient to terminate the relationship in accordance with the regulations. AR 861. The District further asserted that the ALJ made an inappropriate credibility determination, AR 862, 875-76, and whether the Medicare program in fact advised the District to "terminate" in the manner that it did raised a genuine issue that could change the outcome of the revocation. AR 861-62.

The DAB upheld the ALJ's decision and stated that although application of the

2015 regulation was appropriate, Chief Steinberg's participation in diversion was considered a "conviction" under both the 2013 and the 2015 regulations because both versions included "adjudicated pretrial diversions." AR 10, 12.

Second, the definition of "adjudicated" includes "to settle judicially," the DAB explained. AR 12-13. There was no question that Chief Steinberg's legal matter was settled judicially: it was dismissed by the court upon successful completion of diversion and a motion by the government. *Id.* Like the ALJ, the DAB found that the District's contention that an adjudicated pretrial diversion must mean diversion after a guilty plea or conviction overlooks the regulation's antecedent term, "pretrial," and would make the distinction between guilty pleas and adjudicated pretrial diversions meaningless. AR 13-15. The DAB pointed out that diversion programs may sometimes be run through agencies outside of the court, and that these sorts of programs may not be considered "adjudicated." AR 15. But, in Chief Steinberg's case, the court made all applicable decisions, including resolution of the matter. *Id.* This constituted an "adjudication." *Id.*

The DAB understood that the 2015 amendments "expand[ed] the application of the basis for revocation from felony convictions of the supplier itself and its owners to also include 'managing employees.' *Id.* However, the DAB found this distinction was immaterial because revocation can also occur when a supplier provides false or misleading information. AR 16. Captain Steinberg certified that he personally had not been subject to any final adverse legal actions. *Id.* Therefore, the Application provided misleading information–a proper basis for revocation. *Id.*

Finally, the DAB determined that it was within the ALJ's discretion to revoke the District's Medicare participation by finding Chief Steinberg's conviction was detrimental to the Medicare program. AR 16-17. The DAB stated that Captain Steinberg's offense endangered the safety of others and the ALJ's determination that these actions were similar to assault and therefore detrimental under Section 424.535(a)(3)(ii)(A) was reasonable. AR 17. But, even if the DAB had disagreed with the result, it noted the ALJ had discretion to decide what constituted a detrimental action. *Id.*

While the DAB conceded there was a factual dispute about whether the removal

had the functional effect of removing Captain Steinberg from his Medicare duties, it noted this issue did not raise a genuine issue of material fact because the regulation did not permit "simply fencing off the convicted persons from involvement in Medicare matters." AR 21.

Finally, the DAB stated reinstating billing benefits was discretionary, so CMS's denial was within that discretion. AR 19-20.

### f. District Court Appeal

The District now appeals the DAB decision to this Court, arguing that the DAB: (1) erroneously determined Steinberg's participation in diversion was a "conviction" and was "adjudicated"; (2) wrongly decided that it was prohibited from reviewing the ALJ's decision that Steinberg's actions were "detrimental" to the Medicare Program and its beneficiaries; (3) failed to consider that prior to the 2015 revision, a managing employee's felony conviction could not provide a reason for revocation; and (4) improperly determined that there was no genuine issue of material fact over whether the District had "terminated" its relationship with Chief Steinberg. (Doc. 22.)

## II. STANDARD OF REVIEW

### a. Medicare Program

The Medicare Act allows reimbursement to providers and suppliers of healthcare services to Medicare participants. 42 U.S.C. §§ 1395-1395ccc. Ambulance services provided by entities such as Plaintiff Sunsites-Pearce Fire District are considered "suppliers" under federal regulations. *See* 42 U.S.C. § 1395x(d); AR 8, n.2.

When properly enrolled, a supplier can file for and receive payments for the services it provides to Medicare recipients. 42 C.F.R. § 424.505. The Centers for Medicare & Medicaid Services ("CMS")–the entity that administers the Medicare program–entrusts the review of suppliers' applications for Medicare billing eligibility to certain contractors; in this case, Noridian. *See* 42 U.S.C. § 1395ddd(a)-(b). Initial and continuing eligibility for payments is dependent upon honest responses to the Medicare Enrollment Application; billing privileges may be revoked if a supplier provides misleading information. 42 C.F.R. § 424.535(a)(4). In addition, CMS may revoke a

supplier's billing privileges if a provider, owner, or managing employee of a supplier has been convicted of a felony that CMS decides is detrimental to the Medicare program within ten years prior to a Medicare Application. 42 C.F.R. § 424.535(a)(3) (2015); *see also* 42 U.S.C. § 1395u(h)(8); 42 U.S.C. § 1395cc(b)(2)(D).

    b. *Administrative Exhaustion*

  Before the district court may review a revocation of Medicare billing privileges, a supplier must first make a request to CMS for reconsideration. 42 C.F.R. §§ 498.5(l); 498.22(a). If reconsideration is not in the supplier's favor, the supplier can ask for de novo review by an Administrative Law Judge ("ALJ"). 42 C.F.R. § 498.40. A supplier may then appeal the ALJ's decision to the Departmental Appeals Board ("DAB"). 42 U.S.C. § 498.80. The DAB's decision is considered the Secretary's final decision for the purposes of judicial review. *See* 42 C.F.R. §§ 498.90(a)(1), 498.5(f)(2). The district court may then consider an appeal of the final decision of the Secretary "in the same manner as is provided in 42 U.S.C. § 405(g)," the statute guiding judicial review of Social Security claims. *Heckler v. Ringer*, 466 U.S. 602, 605 (1984); 42 U.S.C. § 405(g); 42 U.S.C. § 1395cc(h)(1)(A).

  Upon review, the district court is bestowed with the "power to enter . . . a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court reviews an agency's decision to determine whether such decision was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

  "An agency's interpretation [of its own regulations] must be given controlling weight" and "substantial deference" "unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 506 (1994) (quotation marks omitted). Moreover, the District Courts "must defer to the Secretary's interpretation unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'" *Id.* at 512 (quoting *Gardenbring v. Jenkins*, 485 U.S. 415, 430 (1988)). Furthermore, "[w]hen the meaning of regulatory language is ambiguous, the agency's

interpretation of the regulation controls 'so long as it is 'reasonable,' that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations.'" *Or. Paralyzed Veterans of Am. v. Regal Cinemas, Inc.*, 339 F.3d 1126, 1131 (9th Cir. 2003) (quoting *Martin v. Occupational Safety & Health Review Commission*, 499 U.S. 144, 150–51 (1991) (internal quotation marks omitted).

### III. DISCUSSION

#### a. Whether CMS Could Revoke the District's Billing Privileges When Chief Steinberg was Merely a Managing Employee?

The District argues that the DAB erroneously affirmed CMS's revocation because Chief Steinberg's diversion was not subject to disclosure. (Doc. 22 at 13-14.) Steinberg was merely a managing employee, the District explains, and managing employees were not required to indicate prior convictions under the 2013 regulations; only a provider, supplier, or any owner of the provider or supplier need do so. *Id.*

However, the DAB properly affirmed CMS' decision because the District was subject to revocation under either the 2015 or 2013 regulatory language for providing a false statement. AR 16; s*ee* 42 C.F.R. §§ 424.535(a)(4). The Application question asked whether "*this individual* in Section 6A above [i.e. Steinberg], under any current or former name or business identity, ever had a final adverse legal action listed on [Section 3] of this application *imposed against him* . . . ?" AR 705 (emphasis added). Chief Steinberg marked "NO," and therefore certified that he had not *personally* received any convictions as defined in Section 3.

The District contends that Steinberg did not provide misleading information because Section 3 does not state that managing employees must disclose a conviction, only providers, suppliers, and their owners. (Doc. 22 at 13-14.) However, Section 3 is referenced in this portion of the Application to provide the definition of "conviction," not for the identity of those who must disclose such convictions. Steinberg was asked directly if he had prior felony convictions. To read the question in the manner the District asserts would make the question posed directly to Steinberg duplicative.

- 10 -

The DAB explained that whether Steinberg was a managing employee was immaterial because he provided a false statement. Conditionally, this explanation is reasonable only if Steinberg's participation in the Adult Diversion Program also constituted a "conviction" that he failed to disclose. For the reasons set forth below, the Court finds that it does.

> b. *Whether the DAB erred when it found that Steinberg's participation in the diversion program was a "conviction"?*

The District argues that in 2013, the regulations did not define "conviction," therefore the word should take on the ordinary meaning. (Doc. 22 at 9.) The District states that the Merriam-Webster Dictionary definition of conviction is to "find or prove to be guilty." (*Id.*) Likewise, Black's Law Dictionary defines the term as "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty"). (*Id.*) Since there was no finding of guilt in this matter, the District claims that Steinberg could not have been "convicted" and Medicare billing privileges should not have been revoked. (*Id.* at 10.)

The DAB decided that it was irrelevant which version of the regulations it used; both versions included an "adjudicated pretrial diversion" as a "conviction" subject to disclosure. AR 12. The Court concludes that the DAB's interpretation is reasonable and not inconsistent with either version of the regulation. No matter how "conviction" is otherwise defined, at minimum it includes "adjudicated pretrial diversion." This inclusion negates any need for the Court to further analyze the term "conviction" because, since Steinberg's participation in the Cochise County Adult Diversion Program qualifies as an "adjudicated pretrial diversion," it is considered a "conviction" under the regulations.

> c. *Whether the DAB erred when it found that Steinberg's participation in the diversion program was an "adjudicated pretrial diversion"?*

The District next claims that the DAB should have used the ordinary meaning of "adjudicated" when deciding whether Steinberg's diversion was an "adjudicated pretrial diversion" and therefore a conviction. (Doc. 22 at 10.) Under the plain meaning, it argues, "adjudicated" requires a decision about who is right-i.e. a decision on the merits.

(*Id.*) Since there was no determination of guilt, but rather a dismissal, the matter was not adjudicated and cannot be considered a conviction. (*Id.*)

The Court first looks to the legal dictionary definition for guidance. Black's Law Dictionary defines adjudicate as: "1. To rule on judicially. 2. Adjudge." Black's Law Dictionary (11th ed. 2019). Adjudication is defined as: "1. The legal process of resolving a dispute; the process of judicially deciding a case. 2. [J]udgment." *Id.* Moreover, Black's explains that a judgment occurs when a court makes a "final determination of the rights and obligations of the parties in a case." *Id.* Similarly, Merriam-Webster explains adjudicate means "to make an official decision about who is right in (a dispute): to settle judicially." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/adjudicate (last visited June 17, 2020). Both the legal and the layman definition allow for an adjudication to occur in two instances: when a case or dispute is settled through judicial means, and when there is a determination of guilt or liability. It was reasonable for the DAB to decide that Steinberg's participation in diversion had been "adjudicated," because the DAB used the former definition. The DAB found the judge resolved the case by dismissing with prejudice; and this resolution was judicial because a court order disposed of the matter. To find that an "adjudication" must include a determination of the merits both ignores the former definition of the word and would render the phrase "adjudication on the merits" superfluous. The Court gives deference to the DAB's interpretation of the word "adjudicate" because it was not plainly erroneous or inconsistent with the regulation.

Next, the District argues that a "conviction" requires a determination of guilt; therefore, the regulation should be interpreted as finding that an "adjudicated pretrial diversion" can occur only when there is a guilty plea or a conviction with subsequent diversion participation. (Doc. 22 at 11.)

The Court is not persuaded. First, the regulation clearly considers an "adjudicated pretrial diversion" a "conviction," regardless of the plain meaning of the term conviction. Second, as demonstrated in the dictionary definition, an "adjudication" does not require a decision on the merits, but merely a judicial resolution. The DAB's finding that the

judge's dismissal with prejudice adjudicated the matter aligns with the plain meaning of the term adjudicate and does not conflict with the regulation. Third, although the District has pointed to cases showing that diversion participation after a guilty plea or conviction both constitute "adjudicated pretrial diversions" under the regulation, the District has not shown these are the only instances that qualify. The Court agrees with the DAB that viewing the regulation in the manner the District asserts renders the term "pretrial" superfluous. *See* AR 11. The DAB's interpretation of its regulation was consistent with the plain meaning and the intent of the regulation. In sum, Steinberg's participation in the Cochise County Adult Diversion Program was reasonably considered an "adjudicated pretrial diversion" and also a "conviction" subject to disclosure. Correspondingly, the DAB's conclusion to the same was not arbitrary or capricious.

> *d. Whether it was error for the DAB to refuse to review the ALJ's determination that Chief Steinberg's actions were "detrimental to the Medicare program and its beneficiaries"?*

The District claims the ALJ erroneously determined it could not review CMS's decision that Steinberg's actions were detrimental. (Doc. 22 at 12.)

CMS explained that there were certain enumerated offenses that were per se detrimental, such as assault. AR 611. Steinberg's disorderly conduct was also per se detrimental as it was similar to assault "because the crime involved the reckless use of a handgun in the presence of a person." *Id.* Alternatively, CMS found the actions were detrimental because discharging a deadly weapon put Steinberg's former girlfriend in danger, and his actions "call[] into question [Steinberg's] moral turpitude." *Id.* This risky behavior could translate to his work environment, and place Medicare beneficiaries at risk. *Id.*

Upon reconsideration, The ALJ concluded that CMS's determination of a detrimental action was non-reviewable. AR 5. Nonetheless, ALJ also noted that it is within CMS's discretion to decide which actions were detrimental and CMS was not limited by the per se definition. AR 611.

The DAB found that Steinberg's reckless use of a firearm, as illustrated in the

- 13 -

charging document, showed how he had endangered the safety of others. AR 17. This, the DAB concluded, was similar to an assault, but even if it were not considered a per se offense, CMS had discretion to find the disorderly conduct detrimental. *Id.* Logically, the DAB found it was detrimental because Steinberg had demonstrated that he was capable of placing others at risk of harm. AR 17-18.

The Court cannot find the DAB's conclusions are unreasonable, arbitrary, or capricious. Section 424.535(a)(3)(ii)(A) lists crimes that are per se detrimental to the Medicare program but also includes crimes "similar to" those enumerated offenses. The Federal Regulations expressed an intent to allow CMS broad discretion when determining which acts are detrimental. 71 Fed. Reg. 20,760 (CMS has authority to determine which acts are "detrimental" and in doing so can "consider the severity of the underlying offense."). It is true that Steinberg's disorderly conduct was not identical to the enumerated offenses, but the DAB logically concluded that "recklessly handling, displaying or discharging a deadly weapon" in the presence of another was a similar offense that, if repeated, would put Medicare beneficiaries in harm's way.

Moreover, the DAB did not merely concede the ALJ's opinion without review; it noted that the ALJ's decision was "in no way arbitrary and capricious, to determine that [Mr. Steinberg's] particular criminal conduct would make his participation detrimental to the Medicare program and its beneficiaries." AR 18. Even if, *arguendo*, the ALJ erred when finding it could not review CMS' determination, that error is harmless because the DAB suitably found that CMS' decision was reasonable and supported by substantial evidence in the record.

### e. Whether Summary Judgment was appropriate?

The District argues that a genuine issue of material fact remained as to whether it had sufficiently "terminated its business relationship" with Chief Steinberg, and the ALJ inappropriately granted summary judgment. (Doc. 22 at 15-16.) Furthermore, the District claims that the DAB expanded the meaning of the word "termination;" adding the requirement that the District terminate the "entire" business relationship. *Id.* This was far too expansive, and the District argues it should have been provided the opportunity to

- 14 -

demonstrate how it effectively terminated Steinberg by eliminating all of Steinberg's duties related to Medicare. *Id.*

Summary judgement is proper if the pleadings and supporting documents, viewed in the light most favorable to the non–moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A material fact is one "that might affect the outcome of the suit under the governing law. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Dismissing the District's claims, the ALJ stated:

> [The District] argues that its 2017 termination of Mr. Steinberg's Medicare supervisory authority effectively wiped the slate clean, requiring the contractor to reinstate Petitioner as of that date. As support for this contention Petitioner cites an April 26, 2017 resolution by the fire district board that purports to separate Mr. Steinberg from all Medicare issues. However, *neither this resolution nor the supporting testimony offered by Petitioner explains precisely how this arrangement is supposed to work*. Mr. Steinberg retains his duties as fire chief. The ambulance service is part of the district's fire department. Petitioner has provided no mechanism that separates the operation of the ambulance service and associated emergency medical services from the fire department. I find that the contractor had discretion to decline to renew given the vagueness of the resolution and the absence of an explanation as to how Mr. Steinberg would serve as fire chief but not manager of the fire department's ambulance service.

AR 5 (internal citations omitted) (emphasis added).

The ALJ, however, appears to have failed to consider the District's evidence that it acted upon Noridian's advice, which indicated that bifurcating Chief Steinberg's duties would be an effective way to terminate the business relationship and to have its billing

privileges reinstated.[5] In fact, in the ALJ's introduction, he expressly declined to consider the District's evidence, stating, "I decide this case based on the undisputed material facts. However, I refer to some of the parties' exhibits, only for purposes of illustrating facts that are not in dispute." AR 1.

Whether the District was advised by CMS's contracting agent to proceed exactly in the manner that it did was a disputed fact, and was material to whether Noridian's determination the District failed to terminate Steinberg is consistent with CMS' own directive.

Moreover, unlike the DAB, the ALJ's decision does not interpret the regulation as prohibiting bifurcation of Steinberg for termination to occur, but rather seems to permit bifurcation had the District been able to present more evidence of "how this arrangement is supposed to work." This raises a factual dispute that should have precluded summary judgment.

In contrast to the ALJ, the DAB stated that Noridian's alleged faulty advice on how to successfully terminate Steinberg was immaterial to the question of whether Steinberg was in fact terminated within the meaning of the regulation. AR 20. The DAB explained that "[t]he regulation instead refers broadly to the 'termination' of an entire 'business relationship'" and any explanation about how the District successfully separated Steinberg from the Medicare program was inconsequential "because the language of the regulation does not appear to allow simply fencing off of the convicted person from direct involvement in Medicare matter."  AR 21.

The DAB's interpretation of the meaning of "termination" in the regulations is inconsistent with Noridian's initial advice and the ALJ's permissive statement that termination may be possible without complete removal from the entire business. The DAB also inserts the term "entire" relationship into the regulation, something which it

---

[5] The District submitted the declaration of the District Board's Chairperson, AR 484-486, as well as the board meeting minutes, AR 57-61, and Resolution # 17-001, AR 62, each stated that the District acted in response to the advice of Noridian employees. *See also* AR 585 ¶¶ 19-20, 407, 525, 529, 764, 766, 861. The District also provided the names, reference numbers, and dates in which it spoke to Noridian employees and received such information. AR 55, 485. Furthermore, the District provided Chief Steinberg's declaration, which noted that he was removed from all Medicare matters and that he no longer reviews, approves, or responds to Medicare issues for the District. AR 489.

appears the ALJ and Noridian did not do. This inconsistency is unreasonable, as it provides contradictory guidance to a Medicare supplier without explanation and elevates the termination to beyond the business relationship between the convicted person and the Medicare program, but to all related employment regardless of the connection to the Medicare program. The Court, therefore, finds the ALJ and DAB's decision in this respect arbitrary and capricious and inconsistent with the intent of the regulation.

Defendant also contends that the District's claim about Noridian is an estoppel argument, and this is impermissible because there are no allegations of misconduct. (Doc. 27 at 8.) The Court does not construe the District's allegations in this manner. Instead, the District is asserting, and the Court agrees, that the District raised a genuine issue of fact precluding summary judgment: that the District was told by Noridian (a representative of CMS) that it could proceed as it did, and this would terminate its business relationship. The ALJ could not determine as a matter of law whether the actions did in fact terminate the business relationship had the ALJ taken the alleged facts in favor of the District. Any question as to the termination's effectiveness was a factual issue that precluded summary judgment. In turn, the DAB's affirmation of the ALJ's conclusions was also in error.

Instead, the ALJ granted summary judgment, and the Court finds this constituted an error of law. The ALJ allowed that there could be a way to effectively terminate Steinberg through bifurcation. Although there was evidentiary support in the form of declarations by persons with first-hand knowledge, the ALJ decided there was insufficient evidence how the termination was conducted and whether this did in fact terminate the District's relationship. In sum, the ALJ suggested that there are unresolved factual issues as to how termination worked and acknowledged that the District submitted evidence in support of its proposition, but the ALJ did not take these allegations in the light most favorable to the non-moving party. This was error.

Finally, the Court agrees with Defendant that the decision whether to reinstate billing privileges is discretionary, however, by prematurely granting summary judgment, the ALJ did not reach whether the District's revocation should be withdrawn. The proper remedy, therefore, is to remand this case to the ALJ for a limited evidentiary hearing on

the advice received by Noridian, how the termination worked, and a decision on whether the District's billing privileges should be reinstated on this basis.

Accordingly, IT IS ORDERED:

1. Plaintiff's Motion for Judgment on the Administrative Record is GRANTED IN PART. (Doc. 22.)
2. Defendant's Cross-Motion for Judgment on the Administrative Record is DENIED IN PART. (Doc. 24.)
3. This matter REMANDED to the Secretary for limited reconsideration in accordance with this Order.
4. The Clerk of Court shall docket accordingly and close the case file in this matter.

Dated this 13th day of July, 2020.

Honorable Raner C. Collins
Senior United States District Judge